IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| SUSIE JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:17-CV-185 (MTT) |
| | ) |
| HANCOCK COUNTY SCHOOL DISTRICT, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Plaintiff Susie Jones' complaint alleges Georgia Whistleblower Statute and First Amendment retaliation claims against Hancock County School District and Charles Culver, in his official and individual capacity as Hancock County School District Superintendent. Doc. 1. In response to the Defendants' motion for summary judgment (Doc. 13), Jones stated that she did "not oppose summary judgment as to Culver's qualified immunity claim, and Plaintiff does not oppose dismissal of her claim under O.C.G.A. § 45-1-4." Doc. 22 at 15. That leaves only Jones' First Amendment retaliation claim against the School District. For the reasons discussed, the School District is entitled to summary judgment on that claim.

### I. BACKGROUND[1]

Jones began her employment with the School District in 1979 as a custodian and held several positions with the School District throughout her tenure. Doc. 17 at 17:2-

---
[1] Unless stated otherwise, the facts are undisputed.

18; 19:13-24:19. In 2008, she was promoted to curriculum director and testing coordinator. *Id.* at 24:20-25:2. In February 2015, Charles Culver became the interim superintendent of the School District after discussing the position with Board of Education Member Anthony Gilchrist. *Id.* at 40:13-19, 43:15; Doc. 21 at 10:15-11:11:21.

As the curriculum director and testing coordinator, Jones was responsible for ensuring compliance with Georgia Department of Education guidelines for mandated testing, including computer-based tests. Doc. 17 at 30:2-19, 31:2-32:10. This responsibility required Jones to work closely with the School District's technology coordinator, Earnest Warren, and report to her supervisor, Culver, to keep him apprised of testing dates and technology requirements. *Id.* at 29:22-23, 34:3-5, 42:17-23, 43:1-44:14, 46:18-23. Jones kept Culver fully informed of all testing dates and technology requirements and issues while in this position. *Id.* According to Jones, she never had any issues with Warren and never told Culver she had issues with Warren. *Id.* at 46:18-23, 47:8-48:16, 50:9-20.

Culver's recollection of Jones' relationship with Warren is quite different. According to Culver, Jones called Culver multiple times about issues she was having with Warren and asked Culver to intervene. Doc. 21 at 92:1-93:10. Culver told Jones that he did not have time to mediate Jones' issues with Warren and to contact Warren directly to resolve their problems. *Id.* at 93:16-95:11. Culver states that Jones did not do this and continued to request him to resolve their issues. *Id.* at 116:9-12.[2]

---

[2] Clearly, either Jones or Culver is not telling the truth about the relationship between Jones and Warren. That factual dispute is immaterial.

In May 2014, AdvancED interviewed Hancock County citizens and school district employees individually in response to "complaints and allegations that Hancock County Schools may be in violation of the AdvancED Accreditation Standards and/or policies." Docs. 17 at 57:19-58:25, 62:4-9, 63:18-20; 13-2 ¶ 21; 21 at 53:18-54:9, 120-23; 22-1 ¶ 21. AdvancED is a non-profit organization that inspects and accredits public and private schools and colleges and is in no way affiliated with the School District. Doc. 21 at 53:18-53:23. If a school fails to adhere to AdvancED's standards, the school will be put under review and can lose its accreditation. *Id.* at 53:23-54:9. Losing AdvancED accreditation causes a community to lose confidence in the school and may result in students being denied admission to colleges that are accredited by AdvancED. *Id.* at 54:2-15.

The allegations reported to AdvancED specifically related to conduct violations by School District Board members. *Id.* at 120-23. Jones was told by Miranda Wilson, "a representative of the Hancock County School District[,]" that Jones was on the list of people that AdvancED wanted to interview. Docs. 17 at 63:24-64:1, 73:1-74:20, 155; 21 at 124-26. According to Jones, Culver saw that list and thus knew that Jones would be interviewed. Doc. 17 at 74:1-16. The allegations and notice of AdvancED's upcoming investigation were published in the local newspaper. Doc. 21 at 48:17-49:6.

During her interview with AdvancED, Jones expressed concerns about Gilchrist's behavior. *Id.* at 52:4-21, 53:18-54:7. She alleged Gilchrist asked school employees for money to pay his personal bills, interrupted classroom instruction, and yelled at students in the hallways. *Id.* Such behavior, Jones believed, violated the Board's Code of Ethics. *Id.* at 155; Doc. 1-2. Jones never reported this behavior to anyone in the

School District before "because everyone knew[.]"  Doc. 17 at 56:12-25.  Jones believes Gilchrist's unethical behavior ceased in 2015 due to AdvancED's investigation.  *Id.* at 55:20-56:1, 78:7-9.

On May 14, 2015, the day after her interview, AdvancED reported its findings to Culver but did not tell Culver who shared what information.  *Id.* at 80:8-81:22; Doc. 21 at 86:10-90:4.  That same day, Jones, along with two other School District employees who were interviewed by AdvancED, received letters from Culver informing them that their contracts would not be renewed for the upcoming school year.  Docs. 17 at 92:6-93:4; 21 at 90:22-91:4, 108:6-9.  The next day, Culver gave Jones another letter stating that, while her contract as the curriculum director and testing director would not be renewed, the School District would be offering her a contract as a teacher for the upcoming school year, which paid over $10,000 less per year.  Doc. 17 at 93:5-16, 165-66.  Apparently, Culver had failed to take into account Jones' tenured status before sending her the first letter.  Doc. 21 103:3-7.  Culver admitted that he "made an error and a mistake" by sending Jones the first letter because as a tenured teacher, she had "a right to a hearing," and he had to provide her with her "due process rights."  *Id.* at 102:6-20, 103:8-15.

On May 18, Jones complained to the Board at a Board of Education meeting about the letters.  Doc. 17 at 94:13-21.  After the meeting, Gilchrist told Jones that "he was sorry for what happened to [her]" and that he knew which Board member "told Culver to get rid of [her]," but he did not tell her which Board member.  *Id.* at 97:17-98:25.  Jones completed the 2015-2016 school year as a teacher and retired at the end of the year.  *Id.* at 100:8-104:10.

Culver maintains that Jones' inability to work compatibly with Warren was why he decided to not renew Jones' contract as the curriculum director and testing coordinator and to offer her a position as a teacher instead.  Doc. 21 at 94:18-96:2.  According to Jones, Culver terminated her because of the statements she made to AdvancED regarding Gilchrist, even though AdvancED kept the statements made during the interviews anonymous.  Doc. 17 at 80:8-81:22.

## II.  MOTION FOR SUMMARY JUDGMENT STANDARD

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim.'"  *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991) (emphasis in original) (quoting *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986)).  The moving party "simply may show . . . that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 1438 (internal quotation marks and citation omitted).  "Assuming the moving party has met its burden, the non-movant must then show a genuine dispute regarding any issue for which it will bear the burden of proof at trial."  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224-25 (11th Cir. 2002) (citing *Celotex Corp.*, 477 U.S. at 324).

In determining whether a genuine dispute of material fact exists, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted).  A

material fact is any fact relevant or necessary to the outcome of the suit, and a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

## III. DISCUSSION

Public employers cannot retaliate against their employees for speaking about matters of public concern. *E.g.*, *Gonzalez v. Lee Cty. Hous. Auth.*, 161 F.3d 120, 1295 (11th Cir. 1998). However, a public employee's right to freedom of speech is not absolute. *Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1989).

To prevail on a First Amendment retaliation claim, the plaintiff must first show that her speech is "fairly characterized as constituting speech on a matter of *public concern*." *Rankin v. McPherson*, 483 U.S. 378, 383 (1987) (emphasis added) (internal quotation marks and citation omitted). "Speech addresses a matter of public concern when the speech can be 'fairly considered as relating to any matter of political, social, or other concern to the community.'" *Id.* at 1084 (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). The First Amendment is not implicated when a plaintiff speaks as an employee on matters pursuant to her official duties. *Garcetti v. Ceballos*, 547 U.S. 410, 422 (2006). When determining whether a plaintiff spoke as a citizen on a matter of public concern, the Court must look to the "content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 146.

The School District argues that Jones' interview with AdvancED "was akin to the interview" in *Wagner v. Lee County*, 678 F. App'x 913 (11th Cir. 2017). Doc. 13-1 at 9-10. The Court agrees. Wagner worked in the county's Economic Development Office. *Wagner*, 678 F. App'x at 914. While working, Wagner observed illegal activity by EDO

-6-

employees, such as "paying vendors for items that the County did not receive and paying contractors for work that was not performed." *Id.* at 916. Wagner reported these activities to her direct supervisor, Susan Noe. *Id.* at 914-15, 916. An independent organization unaffiliated with the EDO or county management initiated an audit of the EDO, and it asked Noe to "set up an appointment for Wagner to meet with the auditors." *Id.* at 916. Noe then "directed Wagner to the auditors[,] and [] Wagner both spoke to the auditors and provided a written statement" regarding the illegal activity she had witnessed in the EDO office. *Id.* The auditors disclosed Wagner's identity and her statements made in the interview to county officials. *Id.* at 917.

Three months after the audit, Wagner was terminated, along with three other EDO employees who were interviewed. *Id.* at 918-19. She then brought a First Amendment retaliation claim against the county, and the district court dismissed her claim that the county "unlawfully discharged her in retaliation for exercising her First Amendment free speech rights during the EDO audit." *Id.* at 926. Wagner appealed, and the Eleventh Circuit affirmed, holding that Wagner made the statements to the auditors "in accordance with her ordinary duties as an EDO employee" and was thus "speaking in her capacity as an employee rather than in her capacity as a citizen[.]" *Id.* at 926-27 (citing *Alves v. Bd. of Regents of the Univ. Sys. of Ga.*, 804 F.3d 1149, 1160 (11th Cir. 2015), *Lane v. Franks*, 573 U.S. 228, 239-40 (2014), and *Garcetti*, 574 U.S. at 418).

Jones relies on *Lane v. Franks*, 573 U.S. 228 (2014), in which the United States Supreme Court held that "[s]peech involves matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the

community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." Doc. 22 at 12 (quoting *Lane*, 573 U.S. at 241 (internal quotation marks and citation omitted)). But that was just one part of the Court's holding. The Court further held that a public employee's speech is not categorically entitled to First Amendment protection simply because it is speech on a matter of public concern; the speech must also be "*as a citizen* on a matter of public concern." *Lane*, 573 U.S. at 242 (emphasis added).

Here, Jones believed that Gilchrist acted improperly while on school premises. Others apparently had similar concerns, and the School District's accrediting authority, AdvancED, investigated. While improper conduct on school grounds may be a matter of public concern, it is undisputed that AdvancED, acting as the School District's accrediting authority, interviewed Jones in her capacity as a School District employee, not as a citizen, about allegations that the School District might be in violation of accrediting standards. Jones makes no effort to explain why or how she was speaking as a citizen during the interview. *See generally* Doc. 22. Although she may have been speaking about a topic that was of importance to her local community, she was speaking as a School District employee, not as a Hancock County citizen, when the School District made her available for an interview by the its accrediting authority. Without establishing that she was speaking on matters of public concern as a citizen, Jones cannot succeed on her First Amendment retaliation claim.

## IV. CONCLUSION

For the reasons set forth above, Hancock County School District's motion for summary judgment on Jones' First Amendment retaliation claim (Doc. 13) is

**GRANTED**, and that claim (Doc. 1) is **DISMISSED with prejudice**. Because Jones does not oppose summary judgment on her remaining claims (Doc. 22 at 15), judgment will be entered in favor of the Defendants, and those claims are **DISMISSED with prejudice**.[3]

**SO ORDERED,** this 19th day of December, 2018.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT

---

[3] Jones stated that she does not oppose Culver's entitlement to qualified immunity. Doc. 22 at 15. As stated above, Jones' claim against Culver in his individual capacity is thus **DISMISSED with prejudice**. The parties' briefs do not specifically discuss Jones' claim against Culver in his official capacity, but the Court's determination that Jones' claim fails resolves any claim that may remain against Culver in his official capacity.